UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CA 06 205 S

-----------------------------------------------------------------X

BARBARA M. CAVALLARO, Individually, and on behalf of all others similarly situated,

Plaintiff,

-against-

BAUSCH & LOMB INCORPORATED,

Defendant.

-----------------------------------------------------------------X

Case No.:____________

**CLASS ACTION AND INDIVIDUAL COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Barbara M. Cavallaro, by and through her attorneys, brings this action individually and on behalf of the Class identified below against Defendant Bausch & Lomb Incorporated ("Bausch & Lomb") and for her complaint alleges the following upon information and belief:

## OVERVIEW

1. Plaintiff brings this action on behalf of herself and the Class of persons defined below who used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution ("ReNu"), which causes severe fungal infections. Plaintiff brings this action in her individual capacity to recover actual and punitive damages for her personal injuries suffered as a result of her use of ReNu. Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all others similarly situated to recover actual and punitive damages, injunctive relief, and attorneys' fees. Plaintiff seeks to represent the following Class: All citizens, residents or domiciliaries of the United States who used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and developed fungal infections and such citizens', residents' and domiciliaries' estates,

representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors.

## JURISDICTION AND VENUE

2. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332(d)(2). Plaintiff and Defendant are citizens of different states and the amount in controversy of this class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

3. Venue for this cause is proper in the District of Rhode Island, pursuant to and in accordance with 28 U.S.C. §1391 as Bausch & Lomb does business in the State of Rhode Island and this district in particular.

## PARTIES

4. Plaintiff, Barbara M. Cavallaro is and was at all times hereinafter mentioned a citizen of the United States of America, who resides in the City of Cranston, State of Rhode Island. As a direct and proximate result of her use of the Defective Bausch & Lomb ReNu, Plaintiff, Barbara M. Cavallaro, suffered a fungal eye infection caused by fusarium, which resulted in a corneal transplant surgery on December 30, 2005, and will require at least one more corneal transplant. She has also developed cataracts, which will require surgery.

5. Defendant, Bausch & Lomb, is a corporation incorporated under the laws of New York with its principal place of business located at One Bausch & Lomb Place, Rochester, New York 14604-2101.

## FACTUAL ALLEGATIONS

6. Defendant designed, developed, manufactured, tested, packaged,

advertised, promoted, marketed, distributed, labeled, and/or sold the contact lens eye care product ReNu.

7. ReNU is a, "multi-purpose solution for cleaning, rinsing, disinfecting, and storing your soft contact lenses." The Defendant claims that, "ReNu Multi-Purpose Solution makes daily lens care easy."

8. In or about February 2006, Bausch & Lomb suspended sales of ReNU in Asia amidst an increase of incidents of fusarium keratitis and requests by Asian officials to pull ReNU from the shelves.

9. Fungal keratitis is a serious eye infection that can develop through the whole depth of the cornea. Symptoms of fungal keratitis include eye pain, eye discomfort, decrease in vision and light hypersensitivity. The infection can require prolonged drug therapy with antifungal medication. Those infected with fungal keratitis who do not receive or who do not respond to medical treatment may experience significant loss of vision and will usually require surgical intervention, including corneal transplantation.

10. An increase in incidents of patients diagnosed with fusarium keratitis was reported among contact lens users in Asia beginning in November 2005. Singapore health officials noticed an increase in reports of infection in January and discovered 39 cases involving contact lens users from 2005 to February 2006. Cases have also been reported in Malaysia and Hong Kong.

11. According to a Reuters articled dated March 31, 2006, authorities in Singapore linked the incidents of fusarium keratitis to ReNU.

12. Hong Kong officials specifically asked Baush & Lomb to pull ReNU from

the shelves.

13. According to a Morningstar article dated March 31, 2006, ReNU is the only lens care solution to have been identified by Asian officials as the cause of the increase in incidents of fusarium keratitis, "no other contact-lens solution has been singled out."

14. In response to ReNU being singled out as the cause for the increase in incidents of fusarium keratitis in Asia and requests by Asian officials to pull the product from the shelves, Baush & Lomb suspended sales of ReNU in Hong Kong and Singapore in February 2006.

15. Despite the fact that Bausch & Lomb suspended sales of ReNU in February 2006, Singapore's Ministry of Health issued a press release in April 2006 stating the following in relevant part:

> There has been an additional 36 cases of fungal corneal infection reported since the last update in late February (39 cases). In total, 75 cases of fungal corneal infection (which tested positive for Fusarium) with a history of contact lens use have been reported for the period from 1 Nov 2004 to 12 April 2006. This compares with two reported cases from 1 Jan to 31 Oct 2004.
>
> In view of the potentially serious adverse visual consequences of fungal corneal infection, the Ministry of Health had on 17 Feb 2006 advised all contact lens users as a precautionary measure to discontinue the use of Bausch and Lomb's ReNu multipurpose contact lens solution for the time being, until the causes behind this recent increase in infections can be more clearly ascertained.
>
> ***
>
> A comprehensive case-control study (comparing contact lens users with infection and contact lens users without corneal infection) was undertaken in Feb-Mar 2006 to investigate risk factors for the spike in fungal corneal infection. The study found a strong association between corneal infection and the use of ReNu

> solution. This association remained strong even after taking into consideration socio-demographic, lens, hygiene and environmental factors. The findings are also consistent with recent observations made in the US and Hong Kong.

16. On March 8, 2006, the United States Centers for Disease Control and Prevention ("CDC") received a report from an ophthalmologist in New Jersey regarding three patients, all soft-contact lens users, who had been diagnosed with fusarium keratitis.

17. According to the CDC, in addition to those incidents reported by the New Jersey ophthalmologist, "initial contact with several corneal disease specialty centers in the United States have also seen recent increases in fusarium keratitis."

18. In a report dated April 10, 2006, entitled "Fusarium Keratitis – Multiple/States, 2006," the CDC stated that as of April 9, 2006, 109 cases of suspected fusarium keratitis are under investigation by CDC and public health authorities in 17 states of the U.S. including California, Connecticut, Florida, Georgia, Iowa, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Dakota, Ohio, Pennsylvania, Tennessee, Texas and Vermont.

19. Out of the 109 cases, 30 have been fully investigated. Out of the 30 fully investigated cases, 28 of the patients wore soft contact lenses. Out of those 28, a staggering 26 patients used ReNU. The number of suspected or confirmed cases has risen to 186 in 29 states.

20. ReNU, upon information and belief, contains a defect in its chemical composition, which is either inherent to ReNU itself or results from contaminants found in the facility at which it is manufactured.

21. On or about April 10, 2006, the U.S. Food and Drug Administration

(FDA) and the CDC issued a press release, "alerting health care professionals and their patients who wear soft contact lenses to an increasing number of reports in the United States of rare but serious fungal infections in the eye that can cause permanent loss of sight," The press release indicated further that, "[s]ome patients have reported a significant loss of vision, resulting in the need for a corneal transplant." The FDA indicated that a fungus called *Fusarium* was identified as the cause of the reported infections.

22. Thereafter, Bausch & Lomb announced the suspension of shipments of ReNU due to reports of fungal keratitis infections in contact lens wearers who used ReNU.

23. On or about April 13, 2006, Bausch & Lomb requested that U.S. retailers remove ReNu from their shelves, and recommended that consumers switch to another lens care solution, until the conclusion of the investigation into reports of fungal keratitis infections among contact lens wearers in the United States.

24. The FDA issued a statement on or about April 14, 2006 supporting Bausch & Lomb's decision to withdraw ReNU from the market during the pending investigation.

25. Plaintiff, Barbara M. Cavallaro, used the Defective Bausch & Lomb ReNU.

26. As a direct and proximate result of her use of ReNU, Plaintiff Barbara M. Cavallaro, suffered a fungal eye infection caused by fusarium, which resulted in a corneal transplant surgery on December 30, 2005, and will require at least one more corneal transplant. She has also developed cataracts, which will require surgery.

27. At all times relevant herein, Plaintiff and Class Members were unaware of

the serious side effects and dangerous properties of ReNU as set forth herein.

28. Had Defendant properly disclosed the risks associated with ReNU, Plaintiff and Class Members would not have used the product.

## CLASS DEFINITIONS

29. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all others similarly situated, including the Class defined as follows: All citizens, residents or domiciliaries of the United States who used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and developed fungal infections and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors.

30. Excluded from the Class are:

a. Bausch & Lomb's officers and directors;

b. Any judge or judicial official assigned to this matter and his or her immediate family; and

c. Any legal representative, successor, or assign of an excluded person or entity.

## CLASS ACTION ALLEGATIONS

31. The members of the Class are so numerous that joinder of all members is impractical and impossible. There are thousands of members of the Class set forth above. The disposition of these claims through this class action will be more efficient and will benefit the parties and the Court.

32. Questions of law and fact common to the Class exist as to all members of

the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include the following:

a. Whether ReNU is defective;

b. Whether ReNU has not or will not perform in accordance with the reasonable expectations of ordinary consumers;

c. Whether Bausch & Lomb knew or should have known of the defect;

d. Whether Bausch & Lomb concealed from consumers and/or failed to disclose to consumers the defect;

e. Whether Bausch & Lomb was negligent in designing, testing, manufacturing, marketing, advertising, warranting and selling ReNU;

f. Whether Bausch & Lomb breached express warranties;

g. Whether Bausch & Lomb breached implied warranties of merchantability;

h. Whether Bausch & Lomb misrepresented the characteristics and qualities of ReNU;

i. Whether Bausch & Lomb knew or should have known that ReNU could cause personal injury such as fungal keratitis, and whether Bausch & Lomb failed to disclose that risk of physical harm;

j. Whether Plaintiff, Class Members are entitled to compensatory and punitive damages for Bausch & Lomb's breach of warranties, Bausch & Lomb's misrepresentations and for harm Plaintiff, Class Members suffered.

33. The claims of the named Plaintiff are typical of the claims of the Class in that Plaintiff had and used the defective ReNU in the normal course of disinfecting her contact lenses and suffered injury as a direct and proximate result of such use.

34. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and has no interests adverse to the Class.

35. Plaintiff has retained counsel who are competent and experienced in class action and product liability litigation.

36. This Class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and Courts throughout the Nation would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this Class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court..

**ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

37. Defendant is estopped from relying on any statutes of limitation by virtue of its acts of fraudulent concealment. Upon information and belief, Defendant knows of and has known of the defect in ReNU, and has concealed from purchasers and users of ReNU and/or failed to alert the purchasers and users of the defective nature of ReNU.

38. Given Defendant's failure to disclose this non-public information about the defective nature of ReNU – information over which it had exclusive control -- and

because Plaintiff, Class Members could not reasonably have known that ReNU was thereby defective, Defendant is estopped from relying on any statutes of limitations that might otherwise be applicable to the claims asserted herein.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION - NEGLIGENCE

39. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

40. At all times material hereto, the Defendant had a duty to exercise reasonable care to consumers, including Plaintiff and the Class, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of ReNU.

41. The Defendant breached its duty of reasonable care to Plaintiff and the Class in that it negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold ReNU.

42. Plaintiff's injuries and damages, as alleged herein, and those of the members of the Class, were and are the direct and proximate result of the carelessness and negligence of the Defendant.

43. The Defendant knew or should have known that consumers such as Plaintiff and the members of the Class would foreseeably suffer injury as a result of the Defendant's failure to exercise reasonable and ordinary care.

44. As a proximate result of the aforementioned negligence of Defendant, Plaintiff, Barbara M. Cavallaro, and the members of the Class, suffered personal injuries

and harm, were required to pay for necessary healthcare, attention and services, along with incidental and related expenses, require medical monitoring and will be required to pay for additional necessary healthcare, attention and services, along with additional incidental and related expenses to monitor their condition.

45. The conduct of Defendant was so willful, wanton, malicious, reckless and in disregard for the consequences as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury, and merits the imposition of punitive damages.

46. As a direct and proximate result of Defendant's negligence, Plaintiff and the members of the Class suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiffs injuries and damages, and those of the members of the Class, are permanent and will continue into the future. Plaintiff and the members of the Class seek actual and punitive damages from Defendant, as alleged herein.

**SECOND CAUSE OF ACTION - STRICT LIABILITY**

47. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

48. Defendant designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold ReNU in a condition which rendered it unreasonably dangerous due to its propensity to cause fungal eye infections.

49. ReNU manufactured and/or supplied by Defendant was defective in manufacture or construction in that, when it left the hands of Defendant, it deviated in a material way from Defendant's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula.

50. ReNU manufactured and/or supplied by Defendant was defective in design in that, when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design anchor formulation.

51. Alternatively, RENU supplied by Defendant was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

52. ReNU was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including Plaintiff and the members of the Class, of the dangerous risks and reactions associated with ReNU, notwithstanding Defendant's knowledge of such risks and reactions.

53. The aforementioned defects existed when Defendant placed ReNU into the stream of commerce.

54. Plaintiff's injuries and damages alleged herein, and those of the members of the Class, were a proximate result of these defects.

55. By engaging in the aforesaid conduct, Defendant is strictly liable to Plaintiff and the members of the Class.

56. As a direct and proximate result of Defendant's acts and omissions, Plaintiff and the members of the Class suffered severe and permanent physical injuries

and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and wilt continue to incur such expenses in the future. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured Plaintiff's injuries and damages and those of the members of the Class herein are permanent and will continue into the future. Plaintiff and the members of the Class seek actual and punitive damages from Defendant, as alleged herein.

**THIRD CAUSE OF ACTION - BREACH OF EXPRESS WARRANTY**

57. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

58. Defendant expressly warranted, to Plaintiff and the members of the Class, that ReNU was safe and fit for use by consumers and users for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and lit for its intended use.

59. At the time of the making of the express warranties, Defendant knew or should have known of the purpose for which ReNU was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

60. At the time of the making of the express warranties, Defendant knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that ReNU was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

61. Plaintiff and the members of the Class purchased and used ReNU for its intended purpose.

62. Plaintiff and the members of the Class relied on Defendant's express warranties.

63. Defendant breached said express warranties in that ReNU was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects.

64. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the members of the Class suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages and those of the members of the Class are permanent and will continue into the future. Plaintiff and the members of the Class seek actual and punitive damages from Defendant, as alleged herein.

**FOURTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTIES**

65. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

66. Defendant designed, manufactured, marketed, distributed, supplied and sold ReNU.

67. At the time that Defendant manufactured, marketed, distributed, supplied, and/or sold ReNU, it knew of the use for which ReNU was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

68. Plaintiff and the members of the Class purchased and used ReNU for its

intended purpose.

69. Due to Defendant's wrongful conduct, as alleged herein, neither Plaintiff nor the members of the Class could have known about the nature of the risks and side effects associated with ReNU until after they used it.

70. Contrary to the implied warranty for ReNU, ReNU was not of merchantable quality and was not safe or fit for its intended uses and purposes.

71. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and the members of the Class suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages and those of the members of the Class are permanent and will continue into the future. Plaintiff and the members of the Class seek actual and punitive damages from Defendant, as alleged herein.

## FIFTH CAUSE OF ACTION – MISREPRESENTATION

72. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

73. Defendant misrepresented the safety of ReNU and fraudulently, intentionally, recklessly or negligently concealed material adverse information regarding the safety of ReNU when it had a duty to disclose such information to the consuming public, including to Plaintiff and the members of the Class.

74. Defendant made false or misleading statements and omissions about the

safety of ReNU in its labeling, advertising, promotional materials, and other marketing efforts.

75. Defendant made these misrepresentations and actively concealed adverse information at a time when it knew, or should have known because of its superior position of knowledge, that ReNU had defects, dangers, and characteristics which were other than Defendant represented to the public, including to Plaintiff and the members of the Class.

76. The facts misrepresented or not fully disclosed were material.

77. Defendant made these misrepresentations and actively concealed this information with the intention that Plaintiff and the members of the Class, and the consuming public, would rely on the misrepresentations or omissions in selecting ReNU for purchase and use.

78. Defendant should have reasonably foreseen that Plaintiff and the members of the Class were likely to rely on the facts misrepresented or not disclosed.

79. Plaintiff and the members of the Class reasonably relied on and were induced by Defendant's misrepresentations and/or active concealment in selecting and using ReNU.

80. Plaintiff and the members of the Class sustained injuries and losses as a direct and proximate result of Defendant's misrepresentations or active concealment of information.

81. The conduct of Defendant was so willful, wanton, malicious, reckless and in disregard for the consequences as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury and merits the imposition of punitive damages.

82. As a direct and proximate result of Defendant's acts and omissions,

Plaintiff and the members of the Class suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured, Plaintiff's injuries and damages, and those of the members of the Class, are permanent and will continue into the future. Plaintiff and the members of the Class seek actual and punitive damages from Defendant, as alleged herein.

## SIXTH CAUSE OF ACTION

## VIOLATION OF CONSUMER PROTECTION STATUTES

83. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

84. Defendant engaged in commercial conduct by selling ReNU.

85. Defendant misrepresented and omitted material information regarding ReNU by failing to disclose known risks.

86. Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of ReNU, in violation of Rhode Island General Laws § 6-13.1-1 et seq. and other similar statutes.

87. Rhode Island, all other states and the District of Columbia have enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and

business practices. Defendant violated these statutes by knowingly and falsely representing that ReNU was fit o be used for the purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

88. Defendant engaged in the deceptive acts and practices alleged herein in order to sell ReNU to the public, including Plaintiff and the members of the Class.

89. As a direct and proximate result of Defendant's violations of Rhode Island General Laws § 6-13.1-1 et seq. and other various consumer protection statutes enacted in other stales and the District of Columbia, Plaintiff and the members of the Class have suffered damages, for which Plaintiff and the members of the Class are entitled to compensatory damages) equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

**SEVENTH CAUSE OF ACTION – NEGLIGENCE**
**(Plaintiff Individually for her own Injuries)**

90. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

91. At all times material hereto, the Defendant had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of ReNU.

92. The Defendant breached its duty of reasonable care to Plaintiff in that it negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold ReNU.

93. Plaintiff's injuries and damages, as alleged herein, were and are the direct and proximate result of the carelessness and negligence of the Defendant.

94. The Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of the Defendant's failure to exercise reasonable and ordinary care.

95. As a proximate result of the aforementioned negligence of Defendant, Plaintiff, Barbara M. Cavallaro, suffered personal injuries and harm, was required to pay for necessary healthcare, attention and services, along with incidental and related expenses and will be required to pay for additional necessary healthcare, attention and services, along with additional incidental and related expenses to monitor her condition.

96. The conduct of Defendant was so willful, wanton, malicious, reckless and in disregard for the consequences as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury, and merits the imposition of punitive damages.

97. As a direct and proximate result of Defendant's negligence, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

**EIGHTH CAUSE OF ACTION - STRICT LIABILITY**
**(Plaintiff Individually for her own Injuries)**

98. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

99. Defendant designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold ReNU in a condition

which rendered it unreasonably dangerous due to its propensity to cause fungal eye infections.

100. ReNU manufactured and/or supplied by Defendant was defective in manufacture or construction in that, when it left the hands of Defendant, it deviated in a material way from Defendant's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula.

101. ReNU manufactured and/or supplied by Defendant was defective in design in that, when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design anchor formulation.

102. Alternatively, ReNU supplied by Defendant was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

103. ReNU was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including Plaintiff and the members of the Class, of the dangerous risks and reactions associated with ReNU, notwithstanding Defendant's knowledge of such risks and reactions.

104. The aforementioned defects existed when Defendant placed ReNU into the stream of commerce.

105. Plaintiff's injuries and damages alleged herein were a proximate result of these defects.

106. By engaging in the aforesaid conduct, Defendant is strictly liable to Plaintiff.

107. As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered severe and permanent physical injuries and has endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and wilt continue to incur such expenses in the future. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## NINTH CAUSE OF ACTION - BREACH OF EXPRESS WARRANTY
**(Plaintiff Individually for her own Injuries)**

108. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

109. Defendant expressly warranted, to Plaintiff that ReNU was safe and fit for use by consumers and users for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and lit for its intended use.

110. At the time of the making of the express warranties, Defendant knew or should have known of the purpose for which ReNU was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

111. At the time of the making of the express warranties, Defendant knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that ReNU was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

112. Plaintiff purchased and used ReNU for its intended purpose.

113. Plaintiff relied on Defendant's express warranties.

114. Defendant breached said express warranties in that ReNU was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects.

115. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

**TENTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTIES**
**(Plaintiff Individually for her own Injuries)**

116. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

117. Defendant designed, manufactured, marketed, distributed, supplied and sold ReNU.

118. At the time that Defendant manufactured, marketed, distributed, supplied, and/or sold ReNU, it knew of the use for which ReNU was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

119. Plaintiff purchased and used ReNU for its intended purpose.

120. Due to Defendant's wrongful conduct, as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with ReNU until

after she used it.

121. Contrary to the implied warranty for ReNU, ReNU was not of merchantable quality and was not safe or fit for its intended uses and purposes.

122. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

**ELEVENTH CAUSE OF ACTION – MISREPRESENTATION**
**(Plaintiff Individually for her own Injuries)**

123. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

124. Defendant misrepresented the safety of ReNU and fraudulently, intentionally, recklessly or negligently concealed material adverse information regarding the safety of ReNU when it had a duty to disclose such information to the consuming public, including to Plaintiff.

125. Defendant made false or misleading statements and omissions about the safety of ReNU in its labeling, advertising, promotional materials, and other marketing efforts.

126. Defendant made these misrepresentations and actively concealed adverse information at a time when it knew, or should have known because of its superior position

of knowledge, that ReNU had defects, dangers, and characteristics which were other than Defendant represented to the public, including to Plaintiff.

127. The facts misrepresented or not fully disclosed were material.

128. Defendant made these misrepresentations and actively concealed this information with the intention that Plaintiff and the consuming public, would rely on the misrepresentations or omissions in selecting ReNU for purchase and use.

129. Defendant should have reasonably foreseen that Plaintiff was likely to rely on the facts misrepresented or not disclosed.

130. Plaintiff reasonably relied on and was induced by Defendant's misrepresentations and/or active concealment in selecting and using ReNU.

131. Plaintiff sustained injuries and losses as a direct and proximate result of Defendant's misrepresentations or active concealment of information.

132. The conduct of Defendant was so willful, wanton, malicious, reckless and in disregard for the consequences as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury and merits the imposition of punitive damages.

133. As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. She has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured, Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

**TWELFTH CAUSE OF ACTION –**
**VIOLATION OF CONSUMER PROTECTION STATUTES**
**(Plaintiff Individually for her own Injuries)**

134. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

135. Defendant engaged in commercial conduct by selling ReNU.

136. Defendant misrepresented and omitted material information regarding ReNU by failing to disclose known risks.

137. Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of ReNU, in violation of Rhode Island General Laws § 6-13.1-1 et seq. and other similar statutes.

138. Rhode Island, all other states and the District of Columbia have enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. Defendant violated these statutes by knowingly and falsely representing that ReNU was fit to be used for the purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

139. Defendant engaged in the deceptive acts and practices alleged herein in order to sell ReNU to the public, including Plaintiff.

140. As a direct and proximate result of Defendant's violations of Rhode Island General Laws § 6-13.1-1 et seq., Plaintiff has suffered damages, for which Plaintiff is entitled to compensatory damages, equitable and declaratory relief, punitive damages,

costs and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Class demand judgment against Bausch & Lomb as follows:

a An order certifying the Class, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as counsel to the Class;

b. Equitable, injunctive and declaratory relief, including:

i. enjoining the Defendant from distributing ReNU;

ii. ordering the Defendant to notify all potential Class members of the defects in ReNU; and

iii. establishing a plan and fund for costs and pain and suffering associated with surgery as necessary, evaluation for surgery, and to treat the injuries suffered by the Class members.

c. Damages in an amount to be determined at trial;

d. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

e. Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

f. The costs and disbursements incurred by Plaintiff and the Class members in connection with this action, including reasonable attorneys' fees;

g. All statutory damages;

h. Disgorgement of the Defendant's profits from the sale of ReNU;

i. Such other and further relief available under all applicable state or federal law and any relief the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and all others similarly situated, hereby demands trial by jury as to all issues.

DATED: May 3, 2006

By: Peter N. Wasylyk

Peter N. Wasylyk (RI Bar # 3351)
The Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: (401) 831-7730
Facsimile: (401) 861-6064

Alexander E. Barnett
The Mason Law Firm, P.C.
One Pennsylvania Plaza
Suite 4632
New York, NY 10119
Telephone: (212) 362-5770
Facsimile: (917) 591-5227

Gary E. Mason
The Mason Law Firm, P.C.
1225 19th Street, NW
Suite 500
Washington, D.C. 20038
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

*Counsel for Plaintiff*