# EXHIBIT "A"

FILED

2006 APR 21 AM 11:40

CLERK U.S. DISTRICT COURT
TAMPA, FLORIDA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

HELEN HREEN, Individually, and
on behalf of all others similarly situated,

Plaintiffs,

vs.

BAUSCH & LOMB INCORPORATED,

Defendant.
_______________________________/

DOCKET NO:

**CLASS REPRESENTATION**
8:06CV735-T27TGW

**JURY TRIAL DEMANDED**

Plaintiff, HELEN HREEN, by and through her attorneys, AYLSTOCK WITKIN & SASSER, PLC, brings this action individually and on behalf of the Class identified below and seeks Class status on behalf of herself and the Class as described below and alleges the following upon information and belief:

**OVERVIEW**

1. Plaintiff brings this action on behalf of herself and the class defined below who used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution, which causes severe fungal infections. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, 28 U.S.C. §23, on behalf of herself and all others similarly situated to recover actual and punitive damages including the costs of medical screening and, as necessary, medical monitoring, injunctive relief, and attorneys' fees. Plaintiff seeks to represent the following class and subclasses, which are collectively referred to as the "Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution Class":

> **Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution Class**: All citizens, residents or domiciliaries of the United States who used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and developed fungal infections and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and

"significant others" as their heirs or survivors. The Class further includes the following subclasses:

a. All citizens, residents or domiciliaries of the United States who are currently using or previously used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and developed a fungal infection and require medical monitoring and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors.

b. All citizens, residents or domiciliaries of the United States who are currently using Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and have not developed a fungal infection but require medical monitoring and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors.

c. All citizens, residents or domiciliaries of the United States who previously used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors.

## JURISDICTION AND VENUE

2. At all relevant times, defendant, Bausch & Lomb Incorporated, ( "Defendant" or "Bausch & Lomb"), was engaged in the business of designing, developing, manufacturing, testing, packaging, advertising, promoting, marketing, distributing, labeling, and/or selling the Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution ("subject product").

3. Defendant placed the Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution into the stream of interstate and worldwide commerce.

4. As a direct and proximate result of Defendant placing the subject product into the stream of commerce, Plaintiff and the Class members have suffered and continue to suffer

injuries including, but not limited to, physical, mental and economic loss, pain and suffering, and they will continue to experience such injuries indefinitely.

5. Plaintiff and the Class members have incurred and will incur significant medical, hospital, monitoring, rehabilitative and pharmaceutical expenses, and lost wages.

6. Upon information and belief, at all relevant times, Bausch & Lomb was present and doing business in the State of Florida and in the Middle District of Florida in particular.

7. At all relevant times, Bausch & Lomb transacted, solicited, and conducted business in the State of Florida and derived substantial revenue from such business.

8. At all relevant times, Bausch & Lomb expected or should have expected that its acts would have consequences within the United States of America, and the Middle District of Florida in particular.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act, PL 109-2, 119 Stat. 4, Feb. 18, 2005.

10. Venue is proper in this judicial district because the Plaintiff purchased, consumed, and was injured in this judicial district, Defendant is doing business and maintains corporate offices in this judicial district.

11. Plaintiff is seeking over $75,000 individually, and the amount in controversy for the class exceeds the sum or value of Five Million Dollars ($5,000,000), exclusive of interest and costs.

**PARTIES**

12. Plaintiff, HELEN HREEN, is and was at all relevant times a citizen of the United States of America, and resides in Sarasota, County of Sarasota, Florida. As a direct and proximate result of using the Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-

Purpose Solution, she suffered an infection the eye, requiring immediate medical attention, antibiotic treatment, steroid treatment, and further medical monitoring. Plaintiff is a member of the Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution Class and one or more of its sub-classes.

13. Defendant, Bausch & Lomb, Incorporated is a corporation incorporated under the laws of New York with its principal place of business located at One Bausch & Lomb Place, Rochester, New York 14604-2701. Defendant is registered with the Florida Department of State Division of Corporations and authorized to conduct business in Florida as a foreign for-profit corporation.

## FACTUAL ALLEGATIONS

14. Defendants designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold the contact lens eye care product known as Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution.

15. The subject product is a, "multi-purpose solution for cleaning, rinsing, disinfecting, and storing your soft contact lenses." The Defendant claims that, "ReNu Multi-Purpose Solution makes daily lens care easy."

16. On or about April 10, 2006, the U.S. Food and Drug Administration (FDA) and the Centers for Disease Control and Prevention (CDC) issued a press release, "alerting health care professionals and their patients who wear soft contact lenses to an increasing number of reports in the United States of rare but serious fungal infections in the eye that can cause permanent loss of sight." The press release indicated further that, "[s]ome patients have reported a significant loss of vision, resulting in the need for a corneal transplant." The FDA indicated that a fungus called *Fusarium* was identified as the cause of the reported infections.

17. Thereafter, Bausch & Lomb announced the suspension of shipments of the subject product due to reports of fungal keratitis infections in contact lens wearers who used the subject product.

18. Fungal keratitis is a serious eye infection that can develop through the whole depth of the cornea. Symptoms of fungal keratitis include eye pain, eye discomfort, decrease in vision, and light hypersensitivity. The infection can require prolonged drug therapy with antifungal medication. Those infected with fungal keratitis who do not respond to medical treatment usually require surgical intervention, including corneal transplantation.

19. On or about April 13, 2006, Bausch & Lomb requested that U.S. retailers remove ReNu® with MoistureLoc® from their shelves, and recommended that consumers switch to another lens care solution, until the conclusion of the investigation into reports of fungal keratitis infections among contact lens wearers in the United States.

20. The FDA issued a statement on or about April 14, 2006 supporting Bausch & Lomb's decision to withdraw the subject product from the market during the pending investigation.

21. Plaintiff, HELEN HREEN, used the Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution.

22. As a direct and proximate result of her use of the subject product, Plaintiff, HELEN HREEN, developed an eye infection, requiring immediate medical attention, antibiotic treatment, steroid treatment, and further medical monitoring. Without effective treatment, Plaintiff is at risk for further injury, including corneal surgery and even vision loss.

**CLASS DEFINITIONS**

23. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, 28 U.S.C. §23, on behalf of herself and all others similarly situated, including the Class and sub-classes defined as follows:

**Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution Class**: All citizens, residents or domiciliaries of the United States who used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and developed fungal infections and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors. The Class further includes the following subclasses:

a. All citizens, residents or domiciliaries of the United States who are currently using or previously used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and developed a fungal infection and require medical monitoring and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors.

b. All citizens, residents or domiciliaries of the United States who are currently using Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and have not developed a fungal infection but require medical monitoring and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors.

c. All citizens, residents or domiciliaries of the United States who previously used Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution and such citizens', residents' and domiciliaries' estates, representatives, administrators, spouses, children, relatives and "significant others" as their heirs or survivors.

24. Excluded from the Class are:

a. Bausch & Lomb's officers and directors;

b. Any judge or judicial official assigned to this matter and his or her immediate family; and

c. Any legal representative, successor, or assign of an excluded person or entity.

## CLASS ACTION ALLEGATIONS

25. This proposed class will meet all of the requirements of Fed. R. Civ. P. 23(a), as well as one or all of the sub-parts of Rule 23(B).

26. The members of the Class and sub-classes are so numerous that joinder of all members is impractical and impossible. There are thousands of members of the Class and sub-classes set forth above. The disposition of these claims through this class action will be more efficient and will benefit the parties and the Court.

27. There is a well-defined community of interest in the questions of law and fact common to the Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution Class and its sub-classes that include, but are not limited to, the defectiveness of the subject product and its labeling, defendant's failure to warn and failure to recall, and defendant's knowledge and duty, and these issues predominate over questions affecting only individual class members.

28. The named Plaintiff's claims are typical of the claims of the Class in that Plaintiff had and used the defective subject product in the normal course of disinfecting her contact lenses and suffered injury as a direct and proximate result of such use.

29. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and has no interests adverse to the Class.

30. Plaintiff has retained counsel who are competent and experienced in class action and product liability litigation.

31. A class action approach is superior to litigating multiple individual claims because, among many reasons, the Class does not consist primarily of persons with major physical injuries, and large economies would be achieved by preparing and trying all of the claims at one time. Further, to the extent that the complaint seeks damages in the form of a fund for medical monitoring, a class is an efficient structure within which to establish such a fund.

32. The proposed Class is a particularly manageable one in that the Defendant is under a general duty to users, and the defect is one recognized in every state as giving rise to liability. There is not a sizeable interest in individual members in controlling their own litigation.

## COUNT I – NEGLIGENCE

33. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference each and every allegation of this Class Action Complaint contained in paragraphs 1 through 31 above, with the same force and effect as if fully set forth herein.

34. At all times material hereto, the Defendant had a duty to exercise reasonable care to consumers, including Plaintiff and the Class, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of the subject product.

35. The Defendant breached its duty of reasonable care to Plaintiff and the Class in that it negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold the subject product.

36. Plaintiff's injuries and damages, as alleged herein, and those of the Class members, were and are the direct and proximate result of the carelessness and negligence of the Defendant.

37. The Defendant knew or should have known that consumers such as Plaintiff and the Class members would foreseeably suffer injury as a result of Defendant's failure to exercise reasonable and ordinary care.

38. The injuries sustained by the Plaintiff and the Class members were caused by or were contributed to by Defendant's negligence, recklessness, gross negligence, wantonness, willfulness, and conscious and callous disregard for the safety of the consumers and the public, including Plaintiff and Class members, on the part of Defendant in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of the subject product as being safe and effective for the purposes intended and by inducing the public, Plaintiff, and the members of the Class to believe that the subject product was safe and effective for its intended purposes.

39. As a proximate result of Defendant's aforementioned negligence, Plaintiff, HELEN HREEN, and the Class members, suffered personal injuries and harm, were required to pay for necessary healthcare, attention and services, along with incidental and related expenses, require medical monitoring and will be required to pay for additional necessary healthcare, attention and services, along with additional incidental and related expenses to monitor their condition.

40. Defendant's conduct was so willful, wanton, malicious, and reckless as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury, and therefore warrants punitive damages.

41. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class members suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will

continue to incur such expenses in the future. They have lost past earnings and have suffered a loss of earning capacity. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages, and those of the Class members, are permanent and will continue into the future. Plaintiff and the Class members seek actual and punitive damages from Defendant.

## COUNT II - STRICT LIABILITY

42. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference each and every allegation of this Class Action Complaint contained in paragraphs 1 through 40 above, with the same force and effect as if fully set forth herein.

43. Defendant designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold the subject product in a condition that rendered it unreasonably dangerous due to its propensity to cause fungal eye infections.

44. The subject product manufactured and/or supplied by Defendant was defective in manufacture or construction in that, when it left the hands of Defendant, it deviated in a material way from Defendant's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula.

45. The subject product manufactured and/or supplied by Defendant was defective in design in that, when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design and/or formulation.

46. Alternatively, the subject product supplied by Defendant was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

47. The subject product was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including Plaintiff and the Class members, of the dangerous risks and reactions associated with the subject product, notwithstanding Defendant's knowledge of such risks and reactions.

48. The aforementioned defects existed when Defendant placed the subject product into the stream of commerce.

49. Plaintiff's injuries and damages alleged herein, and those of the Class members, were a proximate result of these defects.

50. By engaging in the aforesaid conduct, Defendant is strictly liable to Plaintiff and the Class members.

51. As a direct and proximate result of Defendant's acts and omissions, Plaintiff and the Class members suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. They have lost past earnings and have suffered a loss of earning capacity. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages and those of the members of the Class herein are permanent and will continue into the future. Plaintiff and the members of the Class seek actual and punitive damages from Defendant, as alleged herein.

**COUNT III - BREACH OF EXPRESS WARRANTY**

52. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference each and every allegation of this Class Action Complaint contained in paragraphs 1 through 50 above, with the same force and effect as if fully set forth herein.

53. Defendant expressly warranted, to Plaintiff and the Class members, that the subject product was safe and fit for use by consumers and users for its intended purpose, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

54. At the time it made the express warranties, Defendant knew or should have known the purpose for which the subject product was to be used, and Defendant warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

55. At the time it made the express warranties, Defendant knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the subject product was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

56. Plaintiff and the Class members purchased and used the subject product for its intended purpose.

57. Plaintiff and the Class members relied on Defendant's express warranties.

58. Defendant breached said express warranties in that the subject product was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects.

59. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class members suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. They have lost past earnings and have suffered a loss of earning capacity. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages and those of the Class members are permanent and will continue

into the future. Plaintiff and the Class members seek actual and punitive damages from Defendant, as alleged herein.

**COUNT IV - BREACH OF IMPLIED WARRANTIES**

60. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference each and every allegation of this Class Action Complaint contained in paragraphs 1 through 58 above, with the same force and effect as if fully set forth herein.

61. Defendant designed, manufactured, marketed, distributed, supplied and sold the subject product.

62. At the time that Defendant manufactured, marketed, distributed, supplied, and/or sold the subject product, it knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

63. Plaintiff and the Class members purchased and used the subject product for its intended purpose.

64. Due to Defendant's wrongful conduct, as alleged herein, neither Plaintiff nor the Class members could have known about the nature of the risks and side effects associated with the subject product until after they used it.

65. Contrary to the implied warranty for the subject product, the subject product was not of merchantable quality and was not safe or fit for its intended uses and purposes.

66. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and the Class members suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. They have lost past earnings and have suffered a loss of earning capacity. They have suffered and will continue to

suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages and those of the members of the Class are permanent and will continue into the future. Plaintiff and the Class members seek actual and punitive damages from Defendant.

**COUNT V - MISREPRESENTATION**

67. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference each and every allegation of this Class Action Complaint contained in paragraphs 1 through 65 above, with the same force and effect as if fully set forth herein.

68. Defendant misrepresented the safety of the subject product and fraudulently, intentionally, recklessly or negligently concealed material adverse information regarding the safety of the subject product when it had a duty to disclose such information to the consuming public, including to Plaintiff and the members of the Class.

69. Defendant made false or misleading statements and omissions about the safety of the subject product in its labeling, advertising, promotional materials, and other marketing efforts.

70. Defendant made these misrepresentations and actively concealed adverse information at a time when it knew, or should have known because of its superior position of knowledge, that the subject product had defects, dangers, and characteristics which were other than Defendant represented to the public, including to Plaintiff and the Class members.

71. The facts misrepresented or not fully disclosed were material.

72. Defendant made these misrepresentations and actively concealed this information with the intention that Plaintiff and the Class members, and the consuming public, would rely on the misrepresentations or omissions in selecting the subject product for purchase and use.

73. Defendant should have reasonably foreseen that Plaintiff and the members of the Class were likely to rely on the facts misrepresented or not disclosed.

74. Plaintiff and the members of the Class reasonably relied on and were induced by Defendant's misrepresentations and/or active concealment in selecting and using the subject product.

75. Plaintiff and the members of the Class sustained injuries and losses as a direct and proximate result of Defendant's misrepresentations or active concealment of information.

76. Defendant's conduct was so willful, wanton, malicious, and reckless as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury, and therefore warrants punitive damages.

77. As a direct and proximate result of Defendant's acts and omissions, Plaintiff and the Class members suffered severe and permanent physical injuries and have endured substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. They have lost past earnings and have suffered a loss of earning capacity. They have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages, and those of Class members, are permanent and will continue into the future. Plaintiff and the Class members seek actual and punitive damages from Defendant.

## COUNT VI
## UNFAIR AND DECEPTIVE TRADE PRACTICES

78. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference each and every allegation of this Class Action Complaint contained in paragraphs 1 through 76 above, with the same force and effect as if fully set forth herein.

79. Defendant engaged in commercial conduct by selling the subject product.

80. Defendant misrepresented and omitted material information regarding the subject product by failing to disclose known risks.

81. Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product, in violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201, et seq and similar statutes.

82. Florida and all other states and the District of Columbia have enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. Defendant violated these statutes by knowingly and falsely representing that the subject product was fit to be used for the purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

83. Defendant engaged in the deceptive acts and practices alleged herein in order to sell the subject product to the public, including Plaintiff and the members of the Class.

84. As a direct and proximate result of Defendant's violations of Florida's Deceptive and Unfair Trade Practices Act and other various consumer protection statutes enacted in other states and the District of Columbia, Plaintiff and the Class members have suffered damages, for which Plaintiff and the Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## COUNT VII
## MEDICAL MONITORING AND NOTIFICATION PROGRAM

85. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference each and every allegation of this Class Action Complaint contained in paragraphs 1 through 83 above, with the same force and effect as if fully set forth herein.

86. As a proximate result of Defendant's actions and omission described above, Plaintiff and the members of the Class have been exposed to an increased risk of serious injury, blindness or death. This increased risk makes periodic diagnostic medical examinations and procedures reasonably necessary. Users and prior users of the subject product need to be monitored periodically. Such monitoring is usually done in a doctor's office, visits to which create an expense.

87. Due to the liability of Defendant as pleaded in the preceding causes of action, one element of Defendant's responsibility and of the damages sought in this case is the establishment of a medical monitoring fund to pay for the costs of monitoring users for potential injuries due to the defects in the subject product.

88. In the absence of such relief, Plaintiff and the Class members will suffer further irreparable harm such as blindness, death and severe and debilitating injuries from their use of the subject product. Without a medical monitoring program, Plaintiff and the members of the Class might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and minimize disability.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Defective Bausch & Lomb ReNu® with MoistureLoc® Multi-Purpose Solution Class and its sub-classes demand judgment against Bausch & Lomb as follows:

a. An order certifying the Class, appointing Plaintiff as class representative, and appointing Aylstock, Witkin & Sasser as counsel to the Class;

b. Establishing medical monitoring fund to provide medical screening, services, research and education and a medical/legal registry to ensure that the Class members receive prompt and proper medical treatment; and

c. Establishing a fund for costs and pain and suffering associated with surgery as necessary, evaluation for surgery, and to treat the injuries suffered by the Class members.

d. Damages in an amount to be determined at trial;

e. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

f. Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

g. The costs and disbursements incurred by Plaintiff and the Class members in connection with this action, including reasonable attorneys' fees;

h. All statutory damages;

i. Disgorgement of the Defendant's profits from the sale of the subject product;

j. Such other and further relief available under all applicable state or federal law and any relief the Court deems just and appropriate.

Date: April 20, 2006

Respectfully submitted,

**AYLSTOCK, WITKIN & SASSER, PLC**

By: ______________________

Neil D. Overholtz, Esq. – Florida Bar No.: 0188761
Douglas A. Kreis, Esq. – Florida Bar No.: 0129704
Bryan F. Aylstock, Esq.- Florida Bar No.: 78263
Justin G. Witkin, Esq. – Florida Bar No.: 0109584
Joshua A. Jones, Esq. – Florida Bar No.: 847291
Aylstock, Witkin & Sasser, P.L.C.
4400 Bayou Boulevard, Suite 58
Pensacola, FL 32503
(850) 916-7450 Phone
(850) 916-7449 facsimile
**Attorneys for Plaintiff**